(157 P.3d 1)
No. 96,519

IN THE MATTER OF THE APPLICATION OF K.S.U. SE
AGRICULTURAL RESEARCH CENTER FOR EXEMPTION FROM AD
VALOREM TAXATION IN LABETTE COUNTY, KANSAS

Opinion filed May 4, 2007.

*Richard H. Seaton,* university attorney, and *Jacqueline R. Butler,* assistant university attorney, of Kansas State University, for appellant.
No appearance by appellee.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

GREENE, J.: Kansas State University Southeast Agricultural Research Center (KSU) appeals from the decision of the Kansas Board of Tax Appeals (BOTA) denying its application for an exemption from ad valorem taxation of a home provided for a caretaker of its research farm in Labette County. Concluding that BOTA erred in denying the exemption, we reverse and remand with directions to grant KSU's application.

## *Factual and Procedural Overview*

KSU is a state educational institution maintaining a research facility at an isolated location in Labette County for a rather extensive cattle operation. In 2005 KSU purchased a small manufactured home to be located on the facility and to serve as living quarters for a caretaker providing security for the property. KSU sought an exemption from ad valorem taxation for the home by filing an application to BOTA, suggesting that the property was entitled to exempt status under both K.S.A. 2004 Supp. 79-201 *Second* and K.S.A. 2004 Supp. 79-201a *Second.*

In its application to BOTA for a tax exemption, KSU designated the use of the property as: "Living quarters for employee who provides security for the research farm, including its livestock, equipment and fuel." Where the application inquired as to other individuals, groups, or organizations that use the subject property and how they use it, KSU stated: "None." Where the application asked to indicate whether a fee is charged in relation to the use of the subject property, KSU replied: "No fee is charged." In response to a question asking which statute authorizes the exemption, KSU listed *both* K.S.A. 2004 Supp. 79-201 *Second* and K.S.A. 2004 Supp. 79-201a *Second.*

The Labette County Appraiser stipulated to the application, recommended that the exemption be granted, and did not request a hearing.

Without holding a hearing, BOTA's initial order denied KSU's application for exemption, finding in relevant part as follows:

"3. The applicant requests exemption from ad valorem taxation pursuant to K.S.A. 79-201 Second and K.S.A. 79-201a Second. Upon review of the application, the Board finds the applicable statute to be K.S.A. 79-201a Second. . . .

"4. The applicant acquired and first used the subject property May 25, 2005. The applicant uses the subject property for living quarters for an employee who provides security for the research farm, including its livestock, equipment, and fuel.

. . . .

"7. As noted above, the Board finds that statutory exemptions are to be strictly construed and the burden of establishing the exemption is on the one claiming it. The Board further finds that, based on the information provided by the applicant, the use of subject property does not meet the statutory requirements of K.S.A. 79-201a Second. Specifically, the statute exempts property 'which is used or is to be used for any governmental or proprietary function. . . .' K.S.A. 79-201a Second. The Board finds the applicant's use of the property as a living quarters for an employee to be for a residential purpose, and therefore outside the scope of the statute. Therefore, the Board concludes that the request for exemption from ad valorem taxation is denied."

On March 22, 2006, KSU filed a petition for reconsideration with BOTA, arguing that it was entitled to an exemption under K.S.A. 2006 Supp. 79-201 Second. KSU also provided additional facts to support the exemption, stating: "The farm is owned and operated by Kansas State University's Division of Research and Extension and is utilized exclusively by that division to carry out its educational and research mission." KSU further alleged: "The farm is in an isolated location and requires the 24-hour presence of an employee to prevent theft or vandalism of farm equipment, fuel, fencing, water supply and 100-300 head of cattle." KSU ultimately contended that "the caretaker's occupation of the residence is incidental to the exempt purpose and use of the property, because it provides security for that property. It is certainly minimal in scope and insubstantial in nature when compared with the overall character and size of the property being protected."

On April 7, 2006, BOTA issued an order denying reconsideration and stating in material part:

"In an order certified March 7, 2006, the Board denied the applicant's request for exemption from ad valorem taxation after making the following findings. First,

the applicable statute in this case was K.S.A. 79-201a Second and not K.S.A. 79-201 Second. Pursuant to K.S.A. 76-712, and amendments thereto, 'the state educational institutions are separate state agencies and state institutions . . . .' Kansas State University is listed as a state educational institution. See K.S.A. 76-711. Secondly, after examining the use of the subject property under K.S.A. 79-201a Second, the Board found that the subject property did not meet the statutory requirements of K.S.A. 79-201a Second as it was being used for residential purposes and not a governmental or proprietary function."

KSU timely appeals from BOTA's orders denying its application for exemption and petition for reconsideration. Labette County did not file a brief or otherwise participate in the appeal.

## *Standard of Review*

On appeal, KSU first contends BOTA erroneously interpreted or applied the law. Specifically, KSU argues BOTA erred in concluding it was not entitled to an exemption under K.S.A. 2006 Supp. 79-201 *Second.*

Orders of BOTA are subject to judicial review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* K.S.A. 74-2426(c). For purposes of this appeal, K.S.A. 77-621(c)(4) requires the appellate court to grant relief if "the agency has erroneously interpreted or applied the law."

Resolution of this argument will require interpretation of the provisions of K.S.A. 2006 Supp. 79-201 and K.S.A. 2006 Supp. 79-201a. The interpretation of a statute is a question of law over which this court has unlimited review. *Foster v. Kansas Dept. of Revenue,* 281 Kan. 368, 374, 130 P.3d 560 (2006). Where BOTA has construed and applied a statute related to taxation, our Supreme Court has held:

"In reviewing a BOTA decision, several well-established principles govern. BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. [Citation omitted.] However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. [Citation

omitted.]" *In re Tax Appeal of ANR Pipeline Co.*, 276 Kan. 702, 709-10, 79 P.3d 751 (2003).

"When construing tax statutes, statutes that impose the tax are to be construed strictly in favor of the taxpayer. Tax exemption statutes, however, are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. [Citation omitted.]" *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

### Did BOTA Erroneously Interpret or Apply the Law in Denying KSU's Application for Exemption?

KSU contends it is entitled to an exemption under K.S.A. 2006 Supp. 79-201 *Second*, which provides an exemption from ad valorem taxation for:

"All real property, and all tangible personal property, actually and regularly used exclusively for . . . educational [or] scientific . . . purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes. . . . [But] [t]his exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: . . . (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph."

In its brief, KSU argues that the primary use of the manufactured home is to advance its educational and scientific research purposes, and the property should be exempt from taxation. KSU further argues that the property is used only incidentally for residential purposes to house the caretaker and that the residential use is minimal in scope and insubstantial in nature.

### *Is KSU Restricted from Application of K.S.A. 2006 Supp. 79-201 due to the specificity of K.S.A. 2006 Supp. 79-201a for Property Used by the State?*

At the outset, we fail to comprehend BOTA's refusal to consider eligibility of KSU for exemption under K.S.A. 2006 Supp. 79-201 *Second*. Its only explanation was by way of citations to K.S.A. 76-711 and K.S.A. 76-712 and a statement that "[KSU] is listed as a state educational institution." To the extent that BOTA seems to

believe that the eligibility of state educational institutions for tax exempt status is restricted to K.S.A. 2006 Supp. 79-201a, we disagree.

First, we note that BOTA's conclusion is unsupported by caselaw; BOTA's order does not provide any citation or authority for its view, other than K.S.A. 76-711 and 76-712, which do little more than identify KSU as a state institution. K.S.A. 79-201 has been in existence in some form since 1907 and K.S.A. 79-201a has been in existence in some form since 1975; if the latter was intended to be the exclusive vehicle to determine exempt status of state property, we believe this view would have emerged long ago.

Second, we note that K.S.A. 2006 Supp. 79-201 expressly contemplates applicability to state-owned property in some of its provisions. For example, K.S.A. 2006 Supp. 79-201 *Third* provides an exemption for all moneys and credits belonging exclusively to "universities, colleges, academies or other public schools of any kind"; and K.S.A. 2006 Supp. 79-201 *Sixth* provides an exemption for all real and tangible personal property actually and regularly used exclusively by the alumni association associated with "any public or nonprofit Kansas college or university." We believe these provisions completely undermine BOTA's view that 79-201 is somehow inapplicable to property owned by state institutions.

Finally, as a matter of statutory construction, we note the broad general language for determining eligibility under K.S.A. 2006 Supp. 79-201 *Second*: "*All* real property, and *all* tangible personal property, actually and regularly used exclusively for . . . educational . . . purposes." (Emphasis added.) Clearly, there is no indication that such language should be read in the restrictive manner that BOTA employed. A statute should not be read to add language that is not found in it or to exclude language that is found in it. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). And perhaps more importantly, we note the use of the term "agency" within 79-201, indicating an express contemplation of "agencies" for eligibility by the statutory language. K.S.A. 76-712 expressly references state educational institutions as "separate state agencies"; we see no reason to exclude KSU as a state

"agency" whose property should be considered for exemption pursuant to the terms of 79-201.

We hold that BOTA erroneously interpreted and applied the provisions of K.S.A. 2006 Supp. 79-201 in refusing to consider KSU's eligibility for exemption under this statute.

### Should Use of KSU's Property for Caretaker Residence Render it Ineligible for Exemption Under K.S.A. 2006 Supp. 79-201 Second?

Rather than remand to BOTA for application of K.S.A. 2006 Supp. 79-201 *Second* to KSU's application, and in the interest of judicial and administrative economy, we examine the application and related pleadings to determine whether eligibility can be determined absent any further agency consideration. In particular, we note the application's indication of all uses made of the property to include "living quarters for employee who provides security for the research farm," and we note that the petition for reconsideration clarified that "the caretaker's occupation of the residence is incidental to the exempt purpose and use of the property, because it provides security for that property. It is certainly minimal in scope and insubstantial in nature when compared with the overall character and size of the property being protected."

As recognized by BOTA in its order on reconsideration, K.S.A. 79-201 *Second* was amended in 1986 to add language forgiving nonexempt uses where "minimal in scope and insubstantial in nature, if such use is incidental to the exempt purposes" outlined in the statute. In *Midwest Presbytery v. Jefferson County Appraiser*, 17 Kan. App. 2d 676, 843 P.2d 277 (1992), we reversed BOTA's holding that a caretaker's residence for maintenance and security at a church camp was not subject to exemption under the amended 1986 version of K.S.A. 79-201. Additionally, we note that prior to the amendment, our Supreme Court held that a residence of the president of a university was eligible for exemption under K.S.A. 79-201 where the official meetings and gatherings were conducted in the building.

"Where such occupancy is for the benefit of the school rather than of the occupant—is intended to serve the ends for which the school is maintained, is adapted thereto and actually accomplishes that object—it becomes in itself an exclusively

educational use. . . . The holding of the official meetings and school gatherings in the building characterizes it as a part of the machinery by which the affairs of the institution are administered. That use is clearly educational." *Kansas Wesleyan Univ. v. Saline County Comm'rs.*, 120 Kan. 496, 497, 243 Pac.1055 (1926).

Consistent with these authorities, our court recently held that a church parsonage building that was also used for housing other visitors and church meetings was eligible for exemption under K.S.A. 79-201 *Second*. See *In re Tax Exemption App. of Holy Spirit Ass'n*, No. 93,800, unpublished opinion filed January 13, 2006.

We conclude and hold that the subject property was owned and operated by a state educational institution for a residential use minimal in scope and incidental to the educational and scientific purposes for the property. Here, the occupancy was clearly for the benefit of KSU rather than the occupant; it was part of the machinery by which the education and research affairs of KSU were administered. For these reasons, we remand to BOTA with directions to grant KSU's application for exemption under K.S.A. 2006 Supp. 79-201 *Second*.

Reversed and remanded with directions.